Fischer, J.
*59 *477 {¶ 1} At issue in this case is whether Ohio's death-penalty scheme violates the right to a trial by jury as guaranteed by the Sixth Amendment to the United States Constitution. The Marion County Court of Common Pleas found that it does, but the Third District Court of Appeals reversed the trial court's judgment. Because the Ohio scheme satisfies the Sixth Amendment, we affirm.
I. Facts and Procedural History
{¶ 2} A jury found that appellant, Maurice Mason, raped and murdered Robin Dennis in 1993. See State v. Mason , 82 Ohio St.3d 144, 148, 694 N.E.2d 932 (1998). The jury found Mason guilty of aggravated murder with a felony-murder capital specification, rape, and having a gun while under disability. The jury recommended a death sentence, and the trial court sentenced him to death. The Third District Court of Appeals and this court affirmed the convictions and sentence. State v. Mason , 3d Dist. Marion No. 9-94-45, 1996 WL 715480 (Dec. 9, 1996) ; Mason , 82 Ohio St.3d 144, 694 N.E.2d 932.
{¶ 3} In 2008, after finding that Mason's trial counsel had provided ineffective assistance, the United States Court of Appeals for the Sixth Circuit granted a conditional writ of habeas corpus and remanded the case to the trial court for a new penalty-phase trial. Mason v. Mitchell , 543 F.3d 766, 768 (6th Cir.2008). On remand, Mason moved the trial court to dismiss the capital specification from his indictment, arguing that Ohio's death-penalty scheme violates the Sixth Amendment right to trial by jury. He relied on the United States Supreme Court's decision in Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 624, 193 L.Ed.2d 504 (2016), which invalidated Florida's former capital-sentencing scheme because it "required the judge alone to find the existence of an aggravating circumstance." The trial court granted Mason's motion, and the state appealed to the Third District Court of Appeals, which reversed the judgment and remanded the case.
{¶ 4} On appeal here, Mason argues that Ohio's death-penalty scheme is unconstitutional under Hurst .
II. Analysis
A. Standard of Review
{¶ 5} We must presume that the death-penalty scheme enacted by the General Assembly is constitutional. R.C. 1.47. To prevail on his facial challenge, Mason must establish "beyond a reasonable doubt that the legislation and constitutional *478 provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher , 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. Thus, "doubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." State v. Gill , 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 (1992).
B. Ohio's Death-Penalty Scheme
{¶ 6} R.C. 2929.03 and 2929.04 establish what is required for a death sentence to be imposed in Ohio when the defendant elects to be tried by a jury. The essential steps outlined below are required under current law and were required under the versions of R.C. 2929.03 and 2929.04 in effect when Dennis was killed in 1993. See Am.Sub.S.B. No. 1, 139 Ohio Laws, Part I, 1, 9-17. Although the Ohio General Assembly has since amended R.C. 2929.03 and 2929.04, because the changes to the wording at issue in this appeal were not substantive, the amendments do not affect the analysis in this case.
{¶ 7} First, to face the possibility of a death sentence, a defendant must be charged in an indictment with aggravated murder and at least one specification of an *60 aggravating circumstance. R.C. 2929.03(A) and (B). The state charged Mason with aggravated murder under R.C. 2903.01(B) and an aggravating circumstance (committing aggravated murder while committing rape) under R.C. 2929.04(A)(7).
{¶ 8} Second, the jury verdict must state that the defendant is found guilty of aggravated murder and must state separately that he is guilty of at least one charged specification. R.C. 2929.03(B). The state must prove guilt of the principal charge and of any specification beyond a reasonable doubt. Id. ; R.C. 2929.04(A). The jury found Mason guilty of aggravated murder and the charged aggravating circumstance.
{¶ 9} Third, once the jury finds the defendant guilty of aggravated murder and at least one specification, he will be sentenced either to death or to life imprisonment. R.C. 2929.03(C)(2). When the defendant is tried by a jury, the penalty "shall be determined * * * [b]y the trial jury and the trial judge." R.C. 2929.03(C)(2)(b).
{¶ 10} Fourth, in the sentencing phase, the court and trial jury shall consider (1) any presentence-investigation or mental-examination report (if the defendant requested an investigation or examination), (2) the trial evidence relevant to the aggravating circumstances the offender was found guilty of committing and relevant to mitigating factors, (3) additional testimony and evidence relevant to the nature and circumstances of the aggravating circumstances and any mitigating factors, (4) any statement of the offender, and (5) the arguments of counsel. R.C. 2929.03(D)(1). In this proceeding, the state must prove beyond a reasonable doubt that "the aggravating circumstances the defendant was found guilty of *479 committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death." Id.
{¶ 11} Fifth, the jury finds and then recommends the sentence: "If the trial jury unanimously finds , by proof beyond a reasonable doubt, that the aggravating circumstances * * * outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender." (Emphasis added.) R.C. 2929.03(D)(2). But "[a]bsent such a finding" by the jury, the jury shall recommend one of the life sentences set forth in R.C. 2929.03(D)(2), and the trial court "shall impose the [life] sentence recommended." Id . Also, if the jury fails to reach a verdict unanimously recommending a sentence, the trial court must impose a life sentence. State v. Springer , 63 Ohio St.3d 167, 586 N.E.2d 96 (1992), syllabus.
{¶ 12} Sixth, if the trial jury recommends a death sentence, and if "the court finds , by proof beyond a reasonable doubt, * * * that the aggravating circumstances * * * outweigh the mitigating factors, [the court] shall impose sentence of death on the offender." (Emphasis added.) R.C. 2929.03(D)(3). Then, the court must state in a separate opinion "the reasons why the aggravating circumstances * * * were sufficient to outweigh the mitigating factors." R.C. 2929.03(F).
C. Sixth Amendment Caselaw
1. Apprendi , Ring , and Hurst
{¶ 13} Mason's Sixth Amendment claim principally relies on Hurst , which, in turn, relied on Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Apprendi involved New Jersey's "hate crime" law, which allowed a trial court to enhance an offender's penalty if the trial judge found that the offender had been motivated by racial or other bias in committing an offense. Apprendi at 468, 120 S.Ct. 2348. The question in Apprendi was whether such an aggravating fact must be found by a jury based on proof beyond a *61 reasonable doubt. Id. at 469, 120 S.Ct. 2348. Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348.
{¶ 14} Two years later, in Ring , the Supreme Court applied Apprendi to invalidate Arizona's former death-penalty scheme, which permitted imposition of a death sentence based solely on a trial judge's finding of the existence of a statutory aggravating circumstance. See Ring at 609, 122 S.Ct. 2428. The Ring court concluded that an aggravating circumstance in a capital case was " 'the functional equivalent of an element of a greater offense' " that must be submitted to a jury. Id. , quoting Apprendi at 494, 120 S.Ct. 2348, fn. 19. Arizona's death-penalty law violated the Sixth Amendment *480 because that law required the trial judge alone to find the aggravating facts necessary to sentence a defendant to death. See id. at 609, 122 S.Ct. 2428.
{¶ 15} The Supreme Court applied Apprendi and Ring in Hurst . A jury found Timothy Hurst guilty of first-degree murder. Although that offense was a capital felony under Florida law, the jury's verdict alone did not qualify Hurst for the death penalty: at the time of his conviction, Florida law provided that " '[a] person who has been convicted of a capital felony shall be punished by death' only if an additional sentencing proceeding 'results in findings by the court that such person shall be punished by death.' " Hurst , --- U.S. ----, 136 S.Ct. at 620, 193 L.Ed.2d 504, quoting former Fla.Stat. 775.082(1), C.S.H.B. No. 3033, Ch. 98-3, Laws of Fla. In Hurst's sentencing proceeding, the jury, as required by former Fla.Stat. 921.141(2), C.S.H.B. 207, Ch. 96-302, Laws of Fla., rendered an "advisory sentence" recommending death, but Florida law did not require the jury to specify the aggravating circumstances that influenced its decision. Id. , citing former Fla. Stat. 921.141. The sentencing judge then imposed a death sentence after independently determining and weighing aggravating circumstances and mitigating factors. Id. , citing former Fla.Stat. 921.141(3). Hurst's sentencing judge, who explained her findings in writing, found that two aggravating circumstances existed. Id.
{¶ 16} The United States Supreme Court began its review of Hurst's Sixth Amendment claim by reciting Apprendi 's basic tenet: "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury." Hurst at ----, 136 S.Ct. at 621, quoting Apprendi , 530 U.S. at 494, 120 S.Ct. 2348, 147 L.Ed.2d 435. It then explained that the Apprendi rule had required invalidation of Arizona's death-penalty scheme in Ring because Arizona had allowed the imposition of the death penalty based solely on judicial fact-finding of the aggravating facts. Hurst at ----, 136 S.Ct. at 621, citing Ring , 536 U.S. at 591-593, 597, 604, 122 S.Ct. 2428, 153 L.Ed.2d 556. The Hurst court concluded that under the same analysis, Florida's scheme had to be invalidated, because Florida did "not require the jury to make the critical findings necessary to impose the death penalty." Id. at ----, 136 S.Ct. at 622. The court observed that the Florida jury's advisory sentence was immaterial for Sixth Amendment purposes, because it did not include " 'specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation [was] not binding on the trial judge.' " Id. , quoting Walton v. Arizona , 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The court held that Florida's *62 scheme violated the Sixth Amendment because Florida law "required the judge alone to find the existence of an aggravating circumstance." Id. at ----, 136 S.Ct. at 624. *481 2. Past Sixth Amendment Challenges to Ohio's Death-Penalty Scheme
{¶ 17} After the Ring decision was issued in 2002, we held that Ohio's death-penalty scheme does not violate the Sixth Amendment right to a jury trial. See State v. Hoffner , 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 68-70. We explained that in contrast to Arizona's scheme, Ohio's capital-sentencing scheme places the responsibility for making all factual determinations regarding whether a defendant should be sentenced to death with the jury. Id. at ¶ 69. We noted that " R.C. 2929.03 charges the jury with determining, by proof beyond a reasonable doubt, the existence of any statutory aggravating circumstances and whether those aggravating circumstances are sufficient to outweigh the defendant's mitigating evidence." Id. , citing R.C. 2929.03(B) and (D). See also State v. Skatzes , 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 221.
{¶ 18} After the Hurst decision, we revisited the issue in State v. Belton , 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 59, stating that "Ohio's capital-sentencing scheme is unlike the laws at issue in Ring and Hurst ." In reaching that conclusion, we reasoned that Ohio law requires a jury in a capital case to make the findings required by the Sixth Amendment, because "the determination of guilt of an aggravating circumstance renders [an Ohio] defendant eligible for a capital sentence," Belton at ¶ 59, and the weighing of aggravating circumstances against mitigating factors "is not a fact-finding process subject to the Sixth Amendment" (emphasis sic), id. at ¶ 60. Mason argues that Belton is not controlling here, because the Hurst question was not squarely presented in that case.
D. Ohio's Death-Penalty Scheme and the Sixth Amendment
{¶ 19} The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This entitles criminal defendants "to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring , 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556. See also Hurst , --- U.S. ----, 136 S.Ct. at 619, 193 L.Ed.2d 504 ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death"). Ohio's death-sentence scheme satisfies this right.
{¶ 20} When an Ohio capital defendant elects to be tried by a jury, the jury decides whether the offender is guilty beyond a reasonable doubt of aggravated murder and-unlike the juries in Ring and Hurst -the aggravating-circumstance specifications for which the offender was indicted. R.C. 2929.03(B). Then the jury-again unlike in Ring and Hurst -must "unanimously find[ ], by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors." R.C. 2929.03(D)(2). An Ohio jury recommends a death sentence only after it makes this finding. Id.
*482 And without that recommendation by the jury, the trial court may not impose the death sentence.
{¶ 21} Ohio law requires the critical jury findings that were not required by the laws at issue in Ring and Hurst . See R.C. 2929.03(C)(2). Ohio's death-penalty scheme, therefore, does not violate the Sixth Amendment. Mason's various arguments to the contrary misapprehend both *63 what the Sixth Amendment requires and what it prohibits.
1. Death Eligibility
{¶ 22} Mason's arguments focus on the sentencing phase within Ohio's death-penalty scheme-namely, the "weighing" process that follows after a defendant has been found guilty of aggravated murder and at least one capital specification. He contends that the jury does too little during this phase (merely recommending a death sentence), while the trial court does too much (imposing the sentence based on its own specific, written findings). Before addressing these points, it is necessary to consider a threshold question: does the weighing that occurs in the sentencing phase-after the jury already has found the existence of an aggravating circumstance-constitute fact-finding under the Sixth Amendment?
{¶ 23} Hurst does not answer, or even address, this question. The question in Hurst was more basic: did the Florida scheme require that a Florida jury make a finding of fact as to an aggravating circumstance before a sentence of death was imposed? See Hurst , --- U.S. ----, 136 S.Ct. at 622, 193 L.Ed.2d 504. Florida's former capital-sentencing scheme was unconstitutional because, instead of requiring the jury to make the critical finding before making its recommendation, it "required the judge alone to find the existence of an aggravating circumstance." Id. at ----, 136 S.Ct. at 624. The Hurst court did refer to Florida's weighing process by mentioning the role mitigating facts play in capital sentencing. Id. at ----, 136 S.Ct. at 622, quoting Walton , 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (a Florida jury " 'does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances' "); id. , quoting former Fla.Stat. 921.141(3) ("The trial court alone must find 'the facts * * * [t]hat sufficient aggravating circumstances exist' and '[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances' " [emphasis, ellipsis, and brackets sic] ). But those references merely described Florida's scheme; the court's holding did not address the weighing process. In the end, the court held only that Florida's sentencing scheme violated the Sixth Amendment because it "required the judge alone to find the existence of an aggravating circumstance." Id. at ----, 136 S.Ct. at 624. With that in mind, it is necessary to consider additional caselaw on the subject.
*483 a. The nature of the weighing process
{¶ 24} The United States Supreme Court has recognized "two different aspects of the capital decision-making process: the eligibility decision and the selection decision." Tuilaepa v. California , 512 U.S. 967, 971, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). For purposes of the Eighth Amendment, a defendant is eligible for the death penalty if the trier of fact finds him guilty of murder and at least one aggravating circumstance. Id. at 972, 114 S.Ct. 2630. This determination is necessarily factual. Id. at 973, 114 S.Ct. 2630. See also Kansas v. Carr , --- U.S. ----, 136 S.Ct. 633, 642, 193 L.Ed.2d 535 (2016) (stating that "the aggravating-factor determination (the so-called 'eligibility phase') * * * is a purely factual determination"). "The selection decision, on the other hand, requires individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure [sic] an assessment of the defendant's culpability." Tuilaepa at 973, 114 S.Ct. 2630. This, the Supreme Court has said, "is mostly a question of mercy," involving an exercise of judgment. Carr at ----, 136 S.Ct. at 642. See also Tuilaepa at 978, 114 S.Ct. 2630 ("at the selection stage, the States are not confined to submitting to the jury specific *64 propositional questions"). Thus, the selection decision does not obviously involve a determination of fact.
{¶ 25} The eligibility/selection distinction is relevant under the Sixth Amendment in capital cases because the Sixth Amendment requires a jury to find beyond a reasonable doubt all facts that make a defendant death-eligible. See Hurst at ----, 136 S.Ct. at 619 (referring to "each fact necessary to impose a sentence of death"); Ring , 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 ("Capital defendants, no less than noncapital defendants * * * are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment"). See also Blakely v. Washington , 542 U.S. 296, 309, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (referring to "the jury's traditional function of finding the facts essential to lawful imposition of the penalty"); Apprendi , 530 U.S. at 483, 120 S.Ct. 2348, 147 L.Ed.2d 435 (referring to "the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense").
{¶ 26} Nearly every court that has considered the issue has held that the Sixth Amendment is applicable to only the fact-bound eligibility decision concerning an offender's guilt of the principal offense and any aggravating circumstances. See United States v. Gabrion , 719 F.3d 511, 532-533 (6th Cir.2013) (rehearing en banc); United States v. Runyon , 707 F.3d 475, 516 (4th Cir.2013) ; United States v. Mitchell , 502 F.3d 931, 993-994 (9th Cir.2007) ; United States v. Sampson , 486 F.3d 13, 31-32 (1st Cir.2007) ; United States v. Fields , 483 F.3d 313, 345-346 (5th Cir.2007) ; United States v. Purkey , 428 F.3d 738, 749 (8th Cir.2005) ; Ritchie v. State , 809 N.E.2d 258, 268 (Ind.2004) ;
*484 Oken v. State , 378 Md. 179, 251, 835 A.2d 1105 (2003) ; Commonwealth v. Roney , 581 Pa. 587, 601, 866 A.2d 351 (2005) ; State v. Gales , 265 Neb. 598, 628, 658 N.W.2d 604 (2003) ; Nunnery v. State , 127 Nev. 749, 770-775, 263 P.3d 235 (2011) ; State v. Fry , 2006-NMSC-001, ¶ 37-38, 138 N.M. 700, 126 P.3d 516.
{¶ 27} But some post- Hurst decisions have held otherwise. See Smith v. Pineda , S.D.Ohio No. 1:12-cv-196, 2017 WL 631410, *3, 2017 U.S. Dist. LEXIS 22082, *6 (Feb. 16, 2017) (finding that Ohio's scheme satisfies the Sixth Amendment but also finding that "the relative weight of aggravating circumstances and mitigating factors is a question of fact akin to an element under the Apprendi line of cases"); Chinn v. Jenkins , S.D.Ohio No. 3:02-cv-512, 2017 WL 631412, *2, 2017 U.S. Dist. LEXIS 22088, *5 (Feb. 13, 2017) (same); Davis v. Bobby , S.D.Ohio No. 2:10-cv-107, 2017 WL 4277202, *2-3, 2017 U.S. Dist. LEXIS 157948, *6-7 (Sept. 25, 2017) ; Rauf v. State , 145 A.3d 430, 434 (Del.2016).
{¶ 28} In Gabrion , the Sixth Circuit (analyzing the federal death-penalty statute) explained that the weighing process requires "not a finding of fact in support of a particular sentence * * * [but] a determination of the sentence itself , within a range for which the defendant is already eligible." (Emphasis sic.) Id. at 533. This analysis is persuasive and applies to the Ohio scheme, which expressly makes the weighing process a determination of the sentence itself. See R.C. 2929.03(C)(2)(b) ("if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender * * * shall be determined * * * [b]y the trial jury and the trial judge, if the offender was tried by jury"). In other words, after completing its role as the fact-finder concerning a defendant's guilt, an Ohio jury assumes a different role as a "sentencer" (albeit in conjunction with the trial court). See *65 Brown v. Sanders , 546 U.S. 212, 216, 126 S.Ct. 884, 163 L.Ed.2d 723 (2006) ("Once the narrowing requirement has been satisfied, the sentencer is called upon to determine whether a defendant thus found eligible for the death penalty should in fact receive it"). But see State v. Rogers , 28 Ohio St.3d 427, 429, 504 N.E.2d 52 (1986) (recognizing the trial court as the ultimate ''sentencing authority''), rev'd on reconsideration on other grounds, 32 Ohio St.3d 70, 512 N.E.2d 581 (1987).
b. Ohio's statutory scheme does not violate the Sixth Amendment
{¶ 29} Based on the above analysis, we were correct to state in Belton , 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, at ¶ 60, that "[w]eighing is not a fact-finding process subject to the Sixth Amendment." (Emphasis sic.) The Sixth Amendment was satisfied once the jury found Mason guilty of aggravated murder and a felony-murder capital specification. See State v. Adams , 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 269 ("Adams became death-eligible when the jury unanimously found him guilty of aggravated murder in the course of some predicate felony");
*485 State v. Davis , 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 189 ("the jury's verdict, and not the judge's findings, made Davis eligible for the death penalty"); State v. Gumm , 73 Ohio St.3d 413, 417, 653 N.E.2d 253 (1995) ("At the point in time at which the factfinder * * * finds the defendant guilty of both aggravated murder and an R.C. 2929.04(A) specification, the defendant has become 'death-eligible,' and a second phase of the proceedings (the 'mitigation' or 'penalty' or 'sentencing' or 'selection' phase begins"). See also Jenkins v. Hutton , --- U.S. ----, 137 S.Ct. 1769, 1772, 198 L.Ed.2d 415 (2017) (stating that Hutton was death-eligible under Ohio law when the jury found him guilty of aggravated murder and two aggravating circumstances). Accordingly, we approve our analysis in Belton and reject Mason's claim that Ohio's death-penalty scheme is unconstitutional under Hurst .
2. The Jury's Role in Sentencing
{¶ 30} While we uphold our conclusion in Belton that weighing is not a fact-finding process subject to the Sixth Amendment, we further conclude that even if the weighing process were to involve fact-finding under the Sixth Amendment, Ohio adequately affords the right to trial by jury during the penalty phase. Mason contends that it does not, because the process permits a jury only to recommend a death sentence. See R.C. 2929.03(D)(2). Here, he emphasizes the statement in Hurst that "[a] jury's mere recommendation is not enough," --- U.S. ----, 136 S.Ct. at 619, 193 L.Ed.2d 504. But he fails to appreciate the material difference between the process by which an Ohio jury reaches its death recommendation and the Florida process at issue in Hurst .
{¶ 31} The Florida statute required the jury to render an "advisory sentence" after hearing the evidence presented in a sentencing-phase proceeding:
Advisory sentence by the jury.-After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
(c) Based on these considerations, whether the defendant *66 should be sentenced to life imprisonment or death.
Former Fla.Stat. 921.141(2). In Hurst , the court held that the Florida scheme violated the Sixth Amendment because it did not require the jury to find that Hurst was guilty of committing a specific aggravating circumstance. Hurst at ----, 136 S.Ct. at 622, 624.
*486 {¶ 32} Ohio law, in contrast, requires a jury to find the defendant guilty beyond a reasonable doubt of at least one aggravating circumstance, R.C. 2929.03(B), before the matter proceeds to the penalty phase, when the jury can recommend a death sentence. Ohio's scheme differs from Florida's because Ohio requires the jury to make this specific and critical finding.
{¶ 33} Mason disputes this conclusion, relying on this court's statement in Rogers , 28 Ohio St.3d at 430, 504 N.E.2d 52, that Florida's system "is remarkably similar to Ohio's." But Rogers involved a different question. See id. at 429-430, 504 N.E.2d 52. Rogers noted that the systems are similar in that they both allow for jury recommendations; it did not consider the findings that the jury was required to make before recommending a sentence.
{¶ 34} Mason also argues that Ohio's scheme is inadequate under the Sixth Amendment because it requires the jury to render "only a general verdict." Here, Mason relies on Hurst 's reference to the " 'specific factual findings' " by a jury that were lacking under Florida's scheme. See Hurst , --- U.S. ----, 136 S.Ct. at 622, 193 L.Ed.2d 504, quoting Walton , 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511. He contends that this requires a jury to explain why it concluded that the aggravating circumstances are sufficient to outweigh the mitigating factors. He contrasts the jury's general verdict to the trial court's sentencing opinion, which indeed must explain "the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors," R.C. 2929.03(F).
{¶ 35} While it is true that a trial court must fully explain its reasoning for imposing a sentence of death, Mason does not provide any support for the proposition that the Sixth Amendment requires a jury to explain why it found that the aggravating circumstances outweigh the mitigating factors. In citing Hurst for this proposition, Mason fails to appreciate that Florida's statutory scheme violated the Sixth Amendment because the jury did not specify its finding of which aggravating circumstance supported its recommendation, not because the jury did not explain why it found that the aggravating circumstances were not outweighed by sufficient mitigating circumstances.
{¶ 36} On a related point, Mason contends that the jury's sentencing-phase finding and recommendation are insufficient because they provide no guidance to the trial court for its own findings and sentence determination. His argument relies on the statement in Hurst that " '[a] Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona,' " Hurst at ----, 136 S.Ct. at 622, quoting Walton at 648, 110 S.Ct. 3047.
{¶ 37} Mason misses a key distinction between Ohio's statutory scheme and the Florida and Arizona statutory schemes at issue in Hurst and Walton : in Ohio, a *487 jury is required to find the defendant guilty of a specific aggravating circumstance, thus establishing the aggravating circumstance that a trial court will weigh against the mitigating factors in its independent determination of punishment. See *67 R.C. 2929.03(D)(3) ; State v. Wogenstahl , 75 Ohio St.3d 344, 662 N.E.2d 311 (1996), paragraph one of the syllabus. Mason does not explain why further guidance for the trial court is constitutionally required.
{¶ 38} Mason also complains that Ohio's statutory scheme does not require the jury to make findings regarding mitigating factors or to specify the factors that it considered in mitigation. There is only limited support for the argument that a jury must do so: Hurst , again quoting Walton , notes that Florida's former scheme did not require the jury to " 'make specific factual findings with regard to the existence of mitigating or aggravating circumstances.' " Hurst , --- U.S. ----, 136 S.Ct. at 622, 193 L.Ed.2d 504, quoting Walton , 497 U.S. at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511. Notably, however, neither Ring nor Hurst held that the Sixth Amendment requires a jury to find mitigating facts. See State v. Were , 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 186. Rather, they recognized that the Sixth Amendment guarantees that a jury will determine the facts that serve to increase the maximum punishment. Ring , 536 U.S. at 589, 122 S.Ct. 2428, 153 L.Ed.2d 556 ; Hurst at ----, 136 S.Ct. at 619. See also Apprendi , 530 U.S. at 490-491, 120 S.Ct. 2348, 147 L.Ed.2d 435, fn. 16 (stating that "[c]ore concerns animating the jury and burden-of-proof requirements are thus absent" when a trial judge alone finds a mitigating fact that reduces an offender's sentence). Because a finding that mitigating facts exist is not "necessary to impose a sentence of death," Hurst at ----, 136 S.Ct. at 619, this aspect of Mason's claim has no merit.
3. The Trial Judge's Role and the Sixth Amendment
{¶ 39} One of Mason's main concerns is the last step in Ohio's capital-sentencing process: the trial judge's independent findings that culminate in a written sentencing opinion. See R.C. 2929.03(D)(3) and (F). He contends that the trial judge must "make additional 'specific findings' beyond those made by the trial jury" and that an offender is not eligible for the death penalty until this judicial task is complete. Relying on Hurst , he says that a death sentence can be imposed in Ohio only after the trial judge makes these "independent factual determinations." But Mason misapprehends the issue, framing it as a question whether a death sentence "can be imposed," instead of whether it "will be imposed." Ohio does not permit the trial judge to find additional aggravating facts but requires the judge to determine, independent of the jury, whether a sentence of death should be imposed. See State v. Roberts , 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 160.
*488 {¶ 40} Two significant flaws are apparent in Mason's claim. First, unlike the Arizona scheme found unconstitutional by the United States Supreme Court in Ring , under the Ohio scheme, the trial court cannot increase an offender's sentence based on its own findings. Rather, the trial court safeguards offenders from wayward juries, similar to how a court might grant a motion for acquittal following a jury verdict under Crim.R. 29(C).
{¶ 41} Second, Mason wrongly supposes that the Sixth Amendment prohibits judicial fact-finding. To be sure, Hurst and Ring both decry judicial fact-finding to some extent. But they do so in the context of reviewing statutory schemes that fail to provide for any jury fact-finding on critical questions. See Hurst , --- U.S. ----, 136 S.Ct. at 622, 193 L.Ed.2d 504 (noting "the central and singular role the judge play[ed] under Florida law" [emphasis added] ); Ring , 536 U.S. at 592, 122 S.Ct. 2428, 153 L.Ed.2d 556 (noting that the court alone made the factual determination *68 of an aggravating factor under Arizona law). The Supreme Court made clear in Blakely , 542 U.S. at 308, 124 S.Ct. 2531, 159 L.Ed.2d 403, that "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury." See also Alleyne v. United States , 570 U.S. 99, 116, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment"); United States v. Booker , 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range").
{¶ 42} Mason suggests that under Hurst , the Sixth Amendment requires the jury alone to decide whether a sentence of death will be imposed. But Hurst did not create this requirement. Ohio trial judges may weigh aggravating circumstances against mitigating factors and impose a death sentence only after the jury itself has made the critical findings and recommended that sentence. Thus, "the judge's authority to sentence derives wholly from the jury's verdict." Blakely at 306, 124 S.Ct. 2531. Under Ohio's death-penalty scheme, therefore, trial judges function squarely within the framework of the Sixth Amendment.
III. Conclusion
{¶ 43} We conclude that Ohio's death-penalty scheme does not violate a defendant's right to a trial by jury as guaranteed by the Sixth Amendment. For this reason, the trial court erred in granting Mason's motion to dismiss the death-penalty specification from his indictment. We accordingly affirm the judgment of the Third District Court of Appeals.
Judgment affirmed.
O'Connor, C.J., and Jensen, French, Hall, and DeWine, JJ., concur.
Kennedy, J., concurs, with an opinion.
James D. Jensen, J., of the Sixth District Court of Appeals, sitting for O'Donnell, J.
Michael T. Hall, J., of the Second District Court of Appeals, sitting for O'Neill, J.